[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO STRIKE NO. 133
On September 7, 1993, the plaintiff, Thomas Rotz, filed a seven-count complaint which names as defendants Middlesex Mutual Assurance Company (Middlesex) and its employee, William Dillon, a claims adjuster. In a revised complaint filed on July 25, 1994, the plaintiff alleges that he sustained a back injury during the course of his employment, and as a result, is entitled to receive workers' compensation benefits. The defendants have contested the plaintiff's right to receive such benefits on the grounds that the plaintiff's injury was not sustained during the course of his employment, and that the plaintiff failed to give his employer proper notice of his intention to file a workers' compensation claim. The plaintiff alleges in his revised complaint that after a formal hearing held on March 9, 1994, the commissioner found in favor of the plaintiff, and found that Middlesex "unreasonably contested liabilty [liability]." (A copy of the commissioner's decision is attached as exhibit "A" to the plaintiff's revised complaint.)
In the first count of the revised complaint, the plaintiff alleges that the defendants acted in bad faith in handling the plaintiff's claim. In the second count, the plaintiff alleges that the defendants' conduct constitutes a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110b
et seq. (CUTPA). In the third count, the plaintiff alleges that the defendants' conduct constitutes a violation of the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-816 (CUIPA). In the fourth count, the plaintiff asserts a tortious breach of contract claim. In the fifth count, the plaintiff asserts a claim for intentional misrepresentation. In the sixth count, the plaintiff alleges that the defendants' conduct "constitutes a violation of public policy." In the seventh count, the plaintiff asserts a conversion claim against CT Page 505 the defendants.
On August 22, 1994, the defendants filed a motion to strike (#133) the plaintiff's revised complaint on the ground that it fails to state a claim upon which relief can be granted. The defendants move to strike the entire revised complaint on the following grounds: (1) that the plaintiff has failed to allege that he exhausted his administrative remedies under the Workers Compensation Act; and (2) that the plaintiff has failed to allege that "a determination of entitlement to benefits has been made by the workers compensation carrier and that the defendants failed to comply with such an order by the workers' compensation commission." Alternatively, the defendants move to strike the second and third counts, which respectively assert CUTPA and CUIPA claims, based on the holding in Lees v. MiddlesexInsurance Co., 229 Conn. 842, A.2d (1994). This file contains no memorandum in opposition filed by the plaintiff.
LAW
"Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, . . . or any one or more counts thereof, to state a claim upon which relief may be granted . . . that party may do so by filing a motion to strike the contested pleading or party thereof." Practice Book § 152(1); Ferryman v. Groton, 212 Conn. 138, 142, 561 A.2d 432
(1989). A motion to strike admits all well-pleaded facts;Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985); which must be construed in the light most favorable to the pleader. Novametrix Medical Systems, Inc. v. BOC Group, Inc.,224 Conn. 210, 215, 618 A.2d 25 (1992). "If facts provable in the complaint would support a cause of action, the motion to strike must be denied." Westport Bank Trust Company v.Corcoran, Mallin Aresco, 221 Conn. 490, 496, 605 A.2d 862
(1992).
The court will first consider the defendants' alternate argument directed at the plaintiff's second and third counts, which respectively assert causes of action sounding in CUTPA and CUIPA. The defendants move to strike these counts on the ground that the plaintiff fails to allege that the defendants engaged in unfair claim settlement practices with such frequency as to constitute a general business practice.
"In requiring proof that the insurer has engaged in unfair CT Page 506 claim settlement practices `with such frequency as to indicate a general business practice,' the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct." Lees v. Middlesex InsuranceCo., supra, 229 Conn. 849. "We conclude that the defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct by the defendant in the processing of any other claim, does not rise to the level of a `general business practice' as required by § 38a-816(6)." Id. This result is mandated even where the plaintiff alleges multiple unfair claim settlement practices with respect to the plaintiff's single workers' compensation claim. Id., n. 9;Quimby v. Kimberly Clark Corp. , 28 Conn. App. 660, 671-72,613 A.2d 838 (1992).
In paragraphs one through thirty-six of the third count, the plaintiff alleges that the defendants engaged in multiple acts of misconduct with respect to the handling of his workers' compensation claim. In paragraph thirty-seven, the plaintiff alleges that "[t]he defendants . . . have acted as aforesaid on other occasions such that [their] conduct appears to be a general practice to discourage Workers' Compensation claims. . . ."
For the purpose of ruling upon a motion to strike, the facts alleged in the complaint, though not the legal conclusions it may contain, are deemed to be admitted." Mahoney v. Conroy,208 Conn. 392, 394, 545 A.2d 1059 (1988). The pleading must fail if it contains only unsupported conclusions of law without the required facts. Cavallo v. Derby Savings Bank,188 Conn. 281, 285, 449 A.2d 986 (1982).
In the present case, paragraph thirty-seven contains a conclusion that is not supported by the requisite factual allegations. Thus, the plaintiff's third count is legally insufficient because the plaintiff fails to properly allege that the defendants engaged in unfair claim settlement practices with such frequency as to constitute a general business practice.
With respect to the plaintiffs' second count, "[a] CUTPA claim based on an alleged unfair claim settlement practice prohibited by § 38a-816(6) requires[s] proof as under CUIPA, that the unfair settlement practice had been committed or performed by the defendant `with such frequency as to indicate a general business practice.'" Lees v. Middlesex Insurance Co., supra,229 Conn. 850. A careful reading of the second count reveals that CT Page 507 the plaintiff does not base his CUTPA claim on allegations of unfair claim settlement practices under CUIPA. Rather, the plaintiff bases his CUTPA claim upon alleged violations of certain provisions of Workers' Compensation Act. Thus the holding in Lees v. Middlesex Insurance Co., is not a valid ground for striking the plaintiff's second count.
The defendants move to strike the first, second, fourth, fifth, sixth and seventh counts of the revised complaint on the ground that the plaintiff fails to allege that "a determination of entitlement to benefits has been made by the workers' compensation carrier and that the defendants failed to comply with such an order by the workers' compensation commission." The defendants also argue that the workers' compensation commissioner has exclusive jurisdiction over the plaintiff's bad faith and intentional misconduct claims, and that the plaintiff has failed to exhaust the administrative remedies available under the Workers' Compensation Act (WCA).
"We consistently have interpreted the exclusivity provision of the act, General Statutes § 31-284(a), as a total bar to common law actions brought by employees against employers for job related injuries with one narrow exception that exists when the employer has committed an intentional tort or where the employer has engaged in wilful or serious misconduct." Suarezv. Dickmont Plastics Corp. , 229 Conn. 99, 106, 639 A.2d 507
(1994). General Statutes § 31-284(a) provides in pertinent part that:
 An employer shall not be liable to any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained. . . . All rights and claims between employer and employees . . . arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter. . . . .
Public Act 93-228, section 1, which amends § 31-275(1) provides in pertinent part that "`arising out of and in the course of his employment' means an accidental injury happening to an employee . . . originating while he has been engaged in the line of his duty in the business or affairs of the employer upon the employer's premises, or while engaged elsewhere upon the CT Page 508 employer's business or affairs. . . ." Therefore the exclusivity provision of the WCA is limited to matters surrounding injuries which arise out of and in the course of the claimant's employment and does not, by its express terms, extend to subsequent dealings between the claimant and the workers' compensation insurer.
In Connecticut, various courts have held that the exclusivity clause does not bar a cause of action where it is alleged that a workers' compensation insurer committed an intentional tort or intentionally acted in bad faith with respect to the handling or payment of the plaintiff's claim. See Carpentino v. Transport Insurance Co., 609 F. Sup. 556, 558
(D.Conn. 1985) (plaintiff alleged that the insurer's unilateral termination of a voluntary agreement to pay benefits caused plaintiff to sustain consequential damages over and above the value of the benefits withheld); Bariko v. Travelers InsuranceCo., 8 Conn. L. Rptr. 316 (1993) (Ballen, J.). See alsoTingley v. Town of Wallingford, 9 CSCR 132 (1994) (Dorsey, J.); Hickman v. U.S. Fire Insurance Co., 2 CSCR 1177
(1987) (Spada, J.); Maroon v. Aetna Casualty Surety, 2 CSCR 1175, 1176 (1987) (Satter, J.); Massav. American Mutual Insurance Co., 1 CSCR 469, 470 (1985) (Byrne, J.).
The Connecticut WCA provides administrative remedies and penalties for certain types of insurer misconduct. Section 31-288(b) of the WCA, as amended by Public Act 93-228, § 6, provides in pertinent part that:
 Whenever (1) through the fault or neglect of an employer or insurer, the adjustment or payment of compensation due under this chapter is unduly delayed, or (2) either party to a claim under this chapter has unreasonably, and without good cause, delayed the completion of the hearings on such claim, the delaying party or parties may be assessed a civil penalty of not more than five hundred dollars by the commissioner hearing the claim for each such delay. . . .
Section 31-300, as amended by Public Act 93-228, § 6, provides in pertinent part that: CT Page 509
 In cases, where through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed, or where through such fault or neglect, payments have been unduly delayed, the commissioner may include in his award interest at the rate prescribed in § 37-3a
and a reasonable attorney's fee in the case of undue delay in adjustments of compensation and may include in his award in the case of undue delay in payments of compensation, interest at twelve per cent per annum and a reasonable attorney's fee. . . .
Sections 31-288(b) and 31-300 provide for a penalty of up to $500.00, attorney's fees and interest in cases where the insurer either unduly delayed the adjustment or payment of compensation, or unreasonably delayed the completion of the hearings. In such cases, the statutory penalties may be incurred by the insurer based on its negligence, and thus, the claimant would not have the burden of proving that the insurer intended to deprive him of his benefits.
By giving the Commissioner the power to adjudicate claims of undue delay in the payment of benefits or the completion of the hearings, it appears that the legislature realized that problems would occur if these claims were simultaneously litigated in two different forums (i.e., in the Superior Court and before the Workers' Compensation Commission). These claims are more appropriately handled by the commissioner, as the commissioner would be in the best position to hear the evidence and rule on the claim in an expedient manner. This administrative remedy also avoids the costs and delays incident to bringing the claims in Superior Court.
Notwithstanding the above, nothing in the language of §§ 31-288(b) and 31-300 expressly prohibits a plaintiff from asserting an intentional tort claim against an insurer. It is not clear whether the legislature, in enacting these statutes, anticipated that insurers would occasionally engage in intentional misconduct, and that such misconduct might proximately cause a plaintiff to suffer consequential damages over and above the value of the benefits that were wrongfully CT Page 510 delayed or withheld. This may, however, be inferred from the fact that these statutes do not give the commissioner the power to hear intentional tort claims and do not provide for administrative penalties or remedies besides the possibility of a $500.00 fine, an award of attorney's fees, or an award of interest at the statutory rate.
In support of his intentional tort claims, the plaintiff alleges, inter alia, that: (1) the defendants failed to pay temporary benefits during their investigation of the plaintiff's claim; (2) the defendants failed to pay benefits to the plaintiff in a timely manner; (3) the defendants unreasonably contest liability; (4) the defendants acted unreasonably in settling the claim; and (5) the plaintiff incurred attorney's fees as a result of the defendants' conduct. The plaintiff's claims are, in part, based on allegations that the defendants delayed in adjusting or paying benefits, and delayed in completing the hearings. If this was the extent of the plaintiff's allegations, then the plaintiff would be limited to the administrative remedies and penalties provided by the WCA.
The plaintiff also alleges, however, that he suffered consequential damages as a result of the defendants' intentional misconduct. Specifically, the plaintiff alleges that he suffered consequential damages for out of pocket medical expenses and loss of income as a result of the defendant's intentional bad faith. The plaintiff also alleges that the defendants intended to force him to either abandon his claim or accept less than fair compensation. Thus, in construing the complaint in the light most favorable to the pleader, the plaintiff sufficiently alleges that the defendants engaged in intentional tortious conduct. Therefore the plaintiff's claims are not barred by the exclusivity provisions of the WCA.
With respect to the defendants' argument that the plaintiff failed to exhaust his administrative remedies, the doctrine of exhaustion leaves to the agency questions over which agency has primary jurisdiction. Cahill v. Board of Education,198 Conn. 229, 241-42, 502 A.2d 410 (1985). Where an administrative remedy is inadequate or futile, however, the exhaustion doctrine does not apply, and the court may hear the matter. Id., 241. In the present case, the applicable provisions of the WCA were not designed to compensate a claimant for consequential damages allegedly caused by an insurer's intentional misconduct, nor do they place exclusive or primary jurisdiction over this issue CT Page 511 with the commissioner.
In paragraph 32 of the first through seventh counts, the plaintiff alleges that a formal hearing was held on March 9, 1994, at which the commissioner found in favor of the plaintiff. A review of the commissioner's decision (attached as an exhibit to the revised complaint) discloses that the commissioner found that the plaintiff sustained a compensable injury which arose out of his employment, and that the commissioner awarded benefits to the plaintiff. While the commissioner also states in his decision that a "further hearing is to be held for purposes of determining interest and attorneys fees," that based on the facts alleged in this case, this "further hearing" does not bar the plaintiff's claims because the plaintiff, in instituting the present action, seeks to litigate issues (i.e., intentional tortious conduct, intentional bad faith, and consequential damages) which cannot be ruled upon by a workers' compensation commissioner.
Accordingly, the defendants' motion to strike is granted as to the third count of the plaintiff's revised complaint (which sounds in CUIPA), and denied as to the other counts.