[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE COUNTS TWO AND THREE
On December 10, 1998, the plaintiff, Darcy Yuille, filed a complaint against the defendant, Bridgeport Hospital. The plaintiff alleges that she sustained an injury at work and that, in response, the defendant subsequently wrongfully terminated the plaintiff's employment. The plaintiff further alleges that the defendant intentionally delayed payment of workers' compensation benefits. Thus, count one alleges wrongful termination and count two alleges "reckless/intentional conduct." A third count claims that such actions constitute a violation of CUTPA under General Statutes § 42-110b et seq. Defendant seeks to strike counts two and three.
The defendant moves to strike the second count alleging intentional wrongful conduct and delay in disbursing compensation benefits on the ground that such a claim is barred by the exclusivity provision of the Workers' Compensation Act (WCA).[1] The plaintiff argues that a special defense rather than a motion to strike must be used to challenge this claim.[2]
"The purpose of the Work[ers'] Compensation Act is to provide a prompt, efficient, simple and inexpensive procedure for obtaining benefits related to employment. . . . Our Supreme Court has also acknowledged the principle that one purpose of work[ers'] compensation is to avoid litigation, delay and expense." (Citations omitted; internal quotation marks omitted.).Mulroy v. Becton Dickinson Co., 48 Conn. App. 774, 779,712 A.2d 436 (1998).
"There is currently a split of authority among the superior courts as to whether a beneficiary of a workers' compensation award can sue an insurance carrier for bad faith handling of the worker's claims. One line of reasoning holds that the exclusivity principle of workers' compensation does not apply because the CT Page 6603 alleged intentional bad faith handling of a workers' compensation claim by an insurance company does not arise during the course of employment, but rather occurs after the injury for which the worker is being compensated. . . . This line of cases also generally holds that since the remedies provided for by workers' compensation do not provide redress for consequential damages suffered as a result of an insurer's bad faith handling of a workers' compensation award, further administrative remedies would be inadequate and exhaustion futile." Moran v. TravelersProperty Casualty, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 350319 (October 23, 1998,Stodolink, J.) (23 Conn. L. Rptr. 383, 384); additionally, seeRotz v. Middlesex Mutual Assurance Co., Superior Court, judicial district of Bridgeport, Docket No. 307488 (January 27, 1995,Hauser, J.) (13 Conn. L. Rptr. 324, 326-27) (court held plaintiff's claims not barred by exclusivity provisions of WCA where plaintiff not only alleged that defendants failed to pay benefits to plaintiff in timely manner, but also alleged that she suffered consequential damages as a result of defendants' intentional misconduct).[3]
As Judge Stodolink noted in Moran, supra, "As the majority of the superior courts in the state have held, allegations of bad faith on the part of the insurer in handling claims are not governed by the provisions of the workers' compensation act. Even though the workers' compensation act makes reference to instances of `undue delay' of payment, the workers' compensation act does not adequately address instances where the insurer or employer deliberately and intentionally acts in bad faith in failing to compensate the injured employee." see also Bariko v. TravelersInsurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 291652 (February 1, 1993, Ballen, J.) (8 Conn. L. Rptr. 318) (court held plaintiff's claim contained "a legally sufficient allegation of intentional misconduct on the part of the defendant, as it alleges that the defendant intended to cause delays in paying the plaintiff's claim, and that the defendant intended to cause the injuries suffered by the plaintiff"). The court finds the reasoning of the majority of the superior court cases more persuasive and therefore denies the defendant's motion to strike count two.
The defendant moves to strike count three on the ground that CUTPA does not apply to an employment relationship because an employment relationship does not constitute trade or commerce for the purposes of an action under CUTPA. The plaintiff argues that CT Page 6604 she has sufficiently alleged a CUTPA violation by alleging that the defendant, in violation of public policy and statutory duties, has taken an unfair trade advantage over business competitors.
General Statutes § 42-110b(a) provides that: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "In order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a trade or business." (Citation omitted; internal quotation marks omitted.) Permanent v. Green, 32 Conn. App. 644, 655,630 A.2d 615, cert. denied, 228 Conn. 903, 634 A.2d 296 (1993). "Trade or commerce, in turn, is broadly defined as the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." (Citation omitted; internal quotation marks omitted.) Springs Condominium Assn.,Inc. v. Seventh BRT Development Corp. , 245 Conn. 1, 42,717 A.2d 77 (1998).
In Quimby v. Kimberly-Clark Corp. , 28 Conn. App. 660, 669,613 A.2d 838 (1992), the complaint alleged a CUTPA violation based on the defendant's failure to pay benefits in a timely manner, to investigate reasonably and promptly the plaintiff's claim and to enter into a reasonable resolution of the plaintiff's claim. The court held that the aforementioned allegations were insufficient to support a CUTPA cause of action because the plaintiff did not allege that the defendant committed the acts "in the conduct of any trade or commerce." (Internal quotation marks omitted.) Id., 670. The court further held that the allegations were insufficient because the plaintiff did not allege that the defendant advertised, sold, leased or distributed any services or property to the plaintiff. Id.
Here, similar to the Quimby case, the complaint alleges that the defendant "has unduly delayed payment of wage loss and medical benefits and failed to timely provide the plaintiff with the aforesaid rights and satisfy its aforesaid duties and obligations. . . ." (Complaint, Count Two, ¶ 15). These allegations are insufficient to state a cause of action under CUTPA because the plaintiff has failed to allege that the defendant's acts occurred "in the conduct of any trade or CT Page 6605 commerce." Even if the plaintiff alleged that the defendant's acts occurred in the conduct of any trade or commerce, it is unlikely that the plaintiff's allegations would be sufficient to state a cause of action under CUTPA because Quimby also suggests that "the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." (Internal quotation marks omitted.) Quimby v. Kimberly-Clark Corp. , supra,28 Conn. App. 670, citing Banerjee v. Robert,641 F. Sup. 1093 (D. Conn. 1986). Therefore, the court grants the defendant's motion to strike count three.
NADEAU, J.